AO 91 (Rev. 11/11)  Criminal Complaint

Complaint Number 2017-057

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

United States of America )
v. )
Samuel Vazanellis )
)
)
)
)

Case No. 17-721-m

_____
*Defendant(s)*

**FILED**
**MAY 25 2017**
By___KATE BARKMAN, Clerk
___Dep. Clerk

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  April 2015 through November 2016  in the county of  Chester  in the

 Eastern  District of  Pennsylvania  , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brian Cosgriff
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  05/25/2017

_____
*Judge's signature*

City and state:  Philadelphia, PA

Marilyn Heffley, U.S. Magistrate Judge
*Printed name and title*

17-721-M

**AFFIDAVIT**

FILED

I, Brian Cosgriff, being duly sworn, do hereby depose and state:

MAY 25 2017

KATE BARKMAN, Clerk

By_____Dep. Clerk

### BACKGROUND

1.      I am a Special Agent employed by the FBI, and have been so employed for over thirty (30) years.  I am current assigned to the Philadelphia Field Office.  I have received extensive training and instruction over the course of my 30-year career with the FBI in cases and investigations involving financial and economic crimes.  As a Special Agent, I investigate violations of federal law, and during the course of my career as a Special Agent with the FBI, I have worked on numerous matters involving financial crimes, including wire fraud, mail fraud, bank fraud schemes, and money laundering operations.

2.      This affidavit is being made in support of a complaint and arrest warrant for SAMUEL VAZANELLIS, of 6668 E. 83rd Ave., Crown Point, IN 46307, for violations of 18 U.S.C. § 1343 (wire fraud).

3.      The statements in this Affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers.  Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are necessary to establish probable cause to believe that SAMUEL VAZANELLIS has committed violations of Title 18 U.S.C. Section § 1343 within the Eastern District of Pennsylvania.

4.      In summary, the following facts establish that there is probable cause to believe that SAMUEL VAZANELLIS knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises, and that in advancing, furthering, or carrying out the scheme, SAMUEL VAZANELLIS transmitted a writing, signal, or sound by means of a wire communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire communication in interstate commerce.

### FACTS

5.      SAMUEL VAZANELLIS is an Indiana-based attorney who was licensed to practice law in the states of Indiana and Illinois.

6.      SAMUEL VAZANELLIS's Indiana bar license was suspended on August 25, 2016 by the Indiana Supreme Court as a result of his refusal to cooperate with three separate disciplinary proceedings brought against him.  On February 27, 2017, by order of the Chief Judge of the Indiana Supreme Court, SAMUEL VAZANELLIS's bar license suspension was converted to an indefinite suspension.

7.      Separately, on March 10, 2017, SAMUEL VAZANELLIS's Illinois bar license was removed from the master roll of attorneys as a result of non-payment of dues.

8.      In or about April 2015, SAMUEL VAZANELLIS was retained by client "A.P.S." to provide legal services. Specifically, in Spring 2015, client "A.P.S." was caught stealing approximately $800,000 of printer toner cartridges from victim corporation Ricoh USA, Inc. ("Ricoh"), based in Malvern, Pennsylvania, within the Eastern District of Pennsylvania. After ordering the printer toner cartridges from Ricoh on behalf of his employer pursuant to his employer's contract with Ricoh, client "A.P.S." sold the printer toner cartridges privately, and kept the proceeds.

9.      As a result of being caught by Ricoh after having stolen nearly $800,000 of printer toner cartridges, client "A.P.S." retained attorney SAMUEL VAZANELLIS to represent him in resolving the matter with Ricoh.

10.      In or about late 2015 and early 2016, SAMUEL VAZANELLIS communicated with Ricoh's head of corporate security in Malvern, Pennsylvania, via telephone calls made to Ricoh's headquarters in Malvern, Pennsylvania, within the Eastern District of Pennsylvania. On those calls, SAMUEL VAZANELLIS stated that he represented client "A.P.S." and was seeking to settle any potential claim Ricoh had against client "A.P.S." Ricoh's head of corporate security informed SAMUEL VAZANELLIS that any formal settlement offer must be put into a written letter.

11.      In subsequent electronic communications between SAMUEL VAZANELLIS and Ricoh's head of corporate security in Malvern, Pennsylvania, SAMUEL VAZANELLIS asked whether the matter could be resolved by a payment from client "A.P.S." to Ricoh totaling $100,000. Ricoh's head of corporate security in Malvern, Pennsylvania responded to SAMUEL VAZANELLIS that any formal settlement offer must be transmitted through a formal letter, and not via informal electronic communications.

12.      SAMUEL VAZANELLIS never responded to that directive, never again contacted Ricoh's head of corporate security in Malvern, Pennsylvania, and Ricoh never heard from SAMUEL VAZANELLIS on any subsequent occasion regarding the matter relating to client "A.P.S.", or regarding any other matter.

13.      In early 2016, SAMUEL VAZANELLIS informed client "A.P.S." that SAMUEL VAZANELLIS had reached a settlement agreement with Ricoh to resolve the stolen print cartridges matter. Specifically, SAMUEL VAZANELLIS told client "A.P.S." that if client "A.P.S." paid Ricoh a cash settlement of $80,000, Ricoh would release all claims against client "A.P.S.", and the matter would be resolved. The money was to be paid to Ricoh by client "A.P.S." through SAMUEL VAZANELLIS.

14.      As a result, client "A.P.S." paid SAMUEL VAZANELLIS a total of $84,995.50, of which $80,000 went to the purported "settlement" with Ricoh, and $4,995.50 went towards

2

legal fees for SAMUEL VAZANELLIS's services.

15.     No money was ever paid to Ricoh by SAMUEL VAZANELLIS, and no settlement was ever reached.

16.     To deceive client "A.P.S." into believing a settlement with Ricoh had been reached, SAMUEL VAZANELLIS created a bogus "settlement agreement" document, purporting to be signed by Ricoh, and purporting to absolve client "A.P.S." of any liability.  In the bogus settlement agreement, SAMUEL VAZANELLIS stole the identity of a Ricoh employee who worked in Malvern, Pennsylvania, by signing the bogus settlement agreement using the name and job title of this "senior manager" at Ricoh to give the bogus settlement agreement the appearance of legitimacy.

17.     In November 2016, client "A.P.S." met with SAMUEL VAZANELLIS at SAMUEL VAZANELLIS's law office.  At that meeting, SAMUEL VAZANELLIS provided to associates of client "A.P.S.", in hard-copy, the following records:  (1) a copy of the fraudulent "Release and Settlement Agreement," purportedly signed by Ricoh, which purported to settle all claims against client "A.P.S." in exchange for $80,000; (2) a copy of the check SAMUEL VAZANELLIS purportedly provided to Ricoh in Malvern, Pennsylvania to settle the claim (the check was dated February 1, 2016, was written in the amount of $80,000, and was drawn on the JP Morgan Chase bank account of SAMUEL VAZANELLIS's law firm, ending in # 6855); and (3) a copy of receipts provided by SAMUEL VAZANELLIS to client "A.P.S." for each separate payment client "A.P.S." made to SAMUEL VAZANELLIS to cover the $80,000 settlement and $4,995.50 in attorney's fees.

18.     On or about October 27, 2015, SAMUEL VAZANELLIS caused to be deposited a check from client "A.P.S." totaling $35,000 into a JP Morgan Chase bank account he controlled by visiting a JP Morgan Chase bank branch in Indiana.  This payment from client "A.P.S." to SAMUEL VAZANELLIS was intended to go towards the purported $80,000 settlement with Ricoh.  SAMUEL VAZANELLIS thus caused, as a result of the check being deposited, JP Morgan Chase bank to send an electronic wire that same day that traveled in interstate commerce containing digital information pertaining to the deposit.

3

## CONCLUSION

19.     Based on the foregoing, I believe that probable cause exists that SAMUEL VAZANELLIS has violated Title 18, United States Code, Section 1343 (wire fraud), within the Eastern District of Pennsylvania and elsewhere.

Respectfully submitted,

Brian Cosgriff
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on May **25**, 2017

HONORABLE MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

4